IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASHLEY WALLS, )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>NCO FINANCIAL SYSTEMS, INC., )<br>    Defendant. )<br>)<br>) | 1:10-cv-2542<br><br>Judge Zagel<br><br><br><br><br>JURY DEMANDED |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

The TCPA makes it illegal to call a person on their cellular telephone using an automatic telephone dialing system, or a prerecorded or artificial voice message. 47 U.S.C. § 227(b)(1)(A)(iii). The defendant NCO Financial Systems, Inc. ("NCO"), a debt collection agency, called plaintiff on her cell phone seventy-four times, and left sixty-two prerecorded debt collection messages.

NCO admits that it did not have plaintiff's consent to make these calls.

It appears that NCO will argue that it was attempting to contact a person different from plaintiff; a person named Jessica Derossett. However, NCO's repeated calls were unreasonable because plaintiff's recorded voice mail "greeting" played for each of the calls stated that the caller had reached "Ashley Walls." NCO thus knew or should have known that the number it was calling was not one for Jessica Derossett, but was plaintiff, an unrelated third party.

NCO's violations were willful. The undisputed evidence shows that it intended to dial the phone number it dialed with its dialer, and that it intended to use its prerecorded messages, too. To the extent that more is needed to prove willfulness, the voice mail greeting

1

NCO received each time it called provided NCO with actual knowledge that it was calling Ashley Walls, rather than Jessica Derossett.

Finally, neither of the two affirmative defenses, mitigation of damages and statute of limitations, is applicable. First, mitigation of damages is not available at all to a TCPA defendant. *Powell v. West Asset Management, Inc.*, 773 F.Supp.2d 761 (N.D.Ill. 2011). Second, this case was filed well within the applicable four-year statute of limitations for TCPA claims.

There are no disputed facts in this case. Plaintiff therefore moves for summary judgment as to liability and willfulness for her TCPA claims, and as to NCO's affirmative defenses.

**I. Statement of Fact**

NCO Financial Systems, Inc., ("NCO") is a debt collection agency. SMF 1. Plaintiff is an individual who resides in Chicago, Illinois, and her cellular telephone number is 314-xxx-0113. SMF 2. At all times when NCO called plaintiff's cellular telephone, plaintiff's outgoing voice mail greeting stated that the caller had reached "Ashley Walls." SMF 3.

Despite that the voice mail greeting notified NCO that it was calling plaintiff, rather than "Jessica Derosett" every single time it called her, NCO called plaintiff's cellular telephone seventy-four times within four years of the filing of this complaint. SMF 4. NCO also left sixty-two prerecorded messages for plaintiff on her cellular telephone, each within four years of the filing of this complaint. SMF 5.

Each of these prerecorded messages was nearly identical, recorded ahead of time, and played automatically when NCO (or its automatic message playing system) believed someone or something had answered plaintiff's phone. SMF 6.

2

Each of the above-mentioned calls were made with one of two dialers NCO uses: its Guaranteed Contacts ("GC") dialer, and its Soundbite dialer. SMF 7. The GC dialer is capable of dialing telephone numbers without human intervention. SMF 8. The Sountbite dialer also capable of dialing phone numbers without human intervention. SMF 9.

Each of the sixty-two recorded message voice mail messages NCO left on plaintiff's voice mail were recorded ahead of time, and then the recordings were played when plaintiff's voice mail picked up. SMF 10.

Whenever NCO uses its dialers and recorded messages, it intends to make such calls, and the calls to the 0113 were intentional, too. SMF 11. Although NCO claims that some calls it made were "manual" calls, those calls were placed and dialed by the GC Dialer, through use of the same dialing system that made the automated calls. SMF 12. There was an NCO employee on the phone for the approximately six "manual" calls to plaintiff's cell phone, who left a "live," non-prerecorded, message on plaintiff's voice mail. SMF 13.

Despite that human beings were present on NCO's end of the telephone line for the "manual" calls, and that plaintiff's outgoing greeting told the NCO employee on the line that she had reached "Ashley Walls", NCO kept calling plaintiff's phone number. SMF 14.

NCO is not aware of any evidence that might suggest that Ashley Walls provided "prior express consent" to be called on her cell phone, 314-xxx-0113. SMF 15.

This Court has federal question subject matter jurisdiction because this case is brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq., which is a federal laws. 28 U.S.C. §1331. SMF 16. Venue is appropriate because plaintiff resides here and received the illegal calls while here. SMF 17.

3

I. **<u>Summary Judgment Standard</u>**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Pugh v. City of Attica, Ind., 259 F.3d 619, 625 (7th Cir.2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. Payne v. Pauley, 337 F.3d 767, 773 (7th Cir.2003) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir.2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir.2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996).

II. **The TCPA.**

In passing the TCPA, Congress acted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S.Rep. No. 102-178, at 1 (1991) as reprinted in 1991 U.S.C.C.A.N. 1968; see *Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009). As the Ninth Circuit explained in *Satterfield*:

> The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls. The consumers complained that such calls are a "nuisance and an invasion of privacy." The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy. We hold that a voice message or a text message are not distinguishable in terms of being an invasion of privacy. *Satterfield*, 569 F.3d at 954 (citations omitted).

Additionally, pursuant to the statute, the Federal Communications Commission ("FCC") has prescribed various regulations implementing TCPA requirements, which are codified at 47 CFR § 64.1200.

The TCPA provides a private right of action based on violations of subsection (b), or the regulations prescribed under that subsection, to recover either the actual monetary loss from such violations or statutory damages of $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3). Courts may treble the amount of damages awarded if the court finds that the defendant's violations were committed "willfully or knowingly". *Id*. Plaintiff seeks statutory damages, only, because the minimum statutory damages exceeds any actual damages she may have.

**A. NCO's Seventy-Four Calls to Plaintiff's Cellular Telephone were Made with an Automatic Telephone Dialing System in Violation of the TCPA.**

The TCPA, 47 U.S.C. §227(b)(1)(A)(iii) provides:

(1) It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
> ***
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A).

Similar to the statute, the TCPA regulations prohibit autodialed and prerecorded calls to cellular telephones:

> (a) No person or entity may:
>
> > (1) Initiate any telephone call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice;
> >
> > (iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 C.F.R. §64.1200(a)(1)(iii). There is no question of fact here: NCO called plaintiff on her cell phone Seventy-Four times using one of its two dialers: its GC dialer and its Soundbite dialer. SMF 7.

NCI admits that each of these dialers are capable of dialing telephone numbers without human intervention, and that most of the calls to plaintiff were actually "dialed" by the telephone system, rather than by a human being. SMF 8, 9. Even the six phone calls that NCO contends were "manually dialed" were also made through NCO's GC Dialer, which has the requisite capacity to bring it within the statute's prohibitions. SMF 12.

The FCC has held that any telephone system that has the "the capacity to dial numbers without human intervention" falls within the prohibitions in the TCPA. In re TCPA, Jan. 4, 2008 order at ¶13; *Griffith v. Consumer Portfolio Services, Inc.*, No 10-cv-2697, 2011 WL 3609012 (Aug. 16, 2011) (Grady, J.); *Hicks v. Client Services, Inc.*, 2009 WL 2365637, at *4-5 (S.D.Fla. June 9, 2009). Both of the dialers NCO used have such a capacity, and were used in this manner as to plaintiff.

**B. Each of NCO's Sixty-Two "Recorded Messages" used "artificial or prerecorded voice" within the meaning of the TCPA.**

The TCPA not only prohibits the making of autodialed calls, but also prohibits the use of a "prerecorded or artificial voice" in any message during a telephone call. 47 U.S.C. §227(b)(1)(A); 47 C.F.R. §64.1200(a)(1). Both Congress and the FCC used the word, "or" between the two phrases: "automatic telephone dialing system <u>or</u> artificial or prerecorded voice." Emphasis added. Thus, either use of the proscribed equipment, or the proscribed recording, constitutes a violation, independently of the other.

The TCPA does not define "artificial" or "prerecorded." The Concise Oxford English Dictionary 11th ed (2008) defines rerecorded:

7

> **pre-record: record (sound or film) in advance.** [1]

Merriam-Webster's Collegiate Dictionary 11th ed. (2003) defines the prefix "Pre" as:

> **pre:** *prefix…* **a (1) : earlier than : prior to : before … (2) : preparatory or prerequisite to**

And defines record as:

> **a (1) : to set down in writing : furnish written evidence of (2) : to deposit an authentic official copy of <record a deed>**
>
> **b : to state for or as if for the record <voted in favor but recorded certain reservations>**
>
> **c (1) : to register permanently by mechanical means <earthquake shocks recorded by a seismograph> (2) : indicate, read <the thermometer recorded 90°>**
>
> **2 : to give evidence of**
>
> **3 : to cause (as sound, visual images, or data) to be registered on something (as a disc or magnetic tape) in reproducible form**

It is clear that Congress and the FCC intended to limit the use of recordings that had been created, or "recorded", prior to the particular telephone call in question.[2] That is precisely what NCO did. The messages it used as to plaintiff were recorded beforehand, and then played when plaintiff or her voice mail picked up. SMF 6, 10.

The Court should issue summary judgment in plaintiff's favor, and against NCO, on the issue of whether the sixty-two "Recorded messages" NCO left for plaintiff violated the TCPA.

---

[1] Technical terms and pronunciations have been omitted from these definitions.

[2] Other communications were proscribed, too, such as text messages. *Satterfield*, 569 F.3d at 954; Lozano v. Twentieth Century Fox Film Corp., 702 F.Supp.2d 999 (N.D.Ill., 2010).

**C. NCO has no Available Affirmative Defenses.**

The Court should also enter judgment in plaintiff's favor as to NCO's TCPA affirmative defenses. Although the TCPA contains a "prior express consent" affirmative defense, NCO has not raised it, and the defense is not available here. Plaintiff did not provide any kind of consent to NCO to receive the telephone calls at issue, and NCO admits as much. SMF 15. See also, *Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681 (N.D.Ill. Aug. 21, 2011) (no consent for TCPA defendant claiming it called the number provided by its creditor, but reached the wrong person; consent of the recipient of the calls is required, rather than that of the intended recipient).

NCO's "third affirmative defense," statute of limitations is similarly off-mark. The statute of limitations for TCPA claims is four years. *Benedia v. Super Fair Cellular, Inc.*, 2007 WL 2903175, at *2 (N.D.Ill. Sept. 26, 2007); *CE Design v. Beaty Const., Inc.*, 2009 WL 192481, at *6 (N.D.Ill. Jan. 26, 2009) (Hibbler, J.); *Sznyter v. Malone*, 155 Cal.App.4th 1152, 66 Cal.Rptr.3d 633 (Cal.App. 2007); *Worsham v. Fairfield Resorts, Inc.*, 188 Md.App. 42, 981 A.2d 24, 32 (Md. App. Sept. 30, 2009).

The calls upon which this case are based happened between March 11, 2009 and January 18, 2010. This case was filed April 23, 2010. [docket entry 1] The vast majority of calls were made within *one* year of the filing of the complaint, let alone four years. This case is not barred by the statute of limitations, and summary judgment should be entered for plaintiff on this issue, as well.

Finally, NCO contends in its fourth affirmative defense that plaintiff failed to mitigate her damages. However, mitigation of damages is not an affirmative defense to TCPA claims. *Powell v. West Asset Management, Inc.*, 773 F.Supp.2d 761 (N.D.Ill. 2011).

**D. NCO's TCPA violations were "willful."**

Finally, NCO's violations of the TCPA were "willful" within the meaning of the statute. "Willful" in the TCPA means that the defendant intended to make the calls, only. *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 6373008 (N.D.Ill. June 17, 2010); 47 U.S.C. §312(f).

It is undisputed that NCO intended to place the calls that it did. SMF 11.

Furthermore, NCO should have known that its calls were reaching plaintiff, rather than the proper debtor, because each time plaintiff's voice mail picked up, a recording was played that stated that the caller had reached "Ashley Walls." SMF 3, 14. Six of the calls to plaintiff NCO placed through its dialing system, including the very first call, were manned by human beings that ostensibly heard, and ignored, this outgoing greeting. The greeting was also played for each and every other call where NCO left a message, but these messages were heard by no one by NCO's GC and Soundbite autodialers. Thus, not only did NCO "intend" to make the calls at issue, its failure to recognize that it was calling the wrong person was reckless and wanton. There is no question that these calls and messages were "willful" within the meaning of the TCPA, and summary judgment should be entered on this issue, too, and treble damages awarded.

**CONCLUSION**

For the forgoing reasons, the Court should enter summary judgment for plaintiff as to her TCPA claims.

        Respectfully submitted,

        /s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com