IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Zagel |
| | ) | |
| - vs- | ) | Case No.:      10 CV 2542 |
| | ) | |
| NCO FINANCIAL SYSTEMS, INC., | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
NCO FINANCIAL SYSTEMS, INC.'S CROSS MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, NCO Financial Systems, Inc. ("NCO"), submits this memorandum in support of its Cross Motion for Summary Judgment and in opposition to the Motion for Summary Judgment filed by plaintiff, Ashley Walls.  Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, the Court should render judgment in favor of NCO, deny plaintiff's Motion for Summary Judgment, and dismiss plaintiff's claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## I. INTRODUCTION

NCO is a national debt collection company.  St. Joseph's Health Center ("St. Joseph") retained NCO to collect a debt owed by Jessica Derossett to St. Joseph.  In an attempt to collect the debt owed to St. Joseph, NCO called Ms. Derossett at telephone number 314-xxx-0113 (the "0113 number").  It is undisputed that the 0113 number was provided by St. Joseph to NCO as a telephone contact number at which Ms. Derossett

could be reached.  It is also undisputed that Ms. Derossett gave the 0113 number to St. Joseph and consented to the receipt of calls at that number.

Plaintiff argues the 0113 number belonged to her when NCO began calling for Ms. Derossett in March 2009.  Plaintiff claims the 0113 number was her cell phone number, and that NCO violated the TCPA by calling the 0113 number.  Plaintiff allegedly has no relationship with NCO and was not a person responsible for the St. Joseph debt.

In shortest summary, NCO attempted to call Ms. Derossett at the 0113 number to obtain payment of the St. Joseph debt but, instead, and unwittingly, apparently reached plaintiff's cell phone.  The only person who knew the calls were going to the wrong person was plaintiff, *yet she did nothing to stop the calls*.  Instead, plaintiff sat back and let the calls roll in.  Plaintiff's motives—although immaterial to this motion—are clear: under the TCPA, a successful plaintiff is entitled to recover $500 per unlawful call, or, in the event that the unlawful calls were made willfully, $1,500 per call.  *See 47 U.S.C. § 227(b)(3)(B) and (C)*.  It was in plaintiff's pecuniary interest to let the calls continue and she did.

Plaintiff's TCPA claims should be dismissed for 4 reasons.  ***First***, the TCPA only applies to non-telemarketers and does not prohibit debt collectors from placing debt collection telephone calls to a person's cell phone number.  NCO is *not* a telemarketer.  While its debt collection calls may be subject to other federal and state laws, they are *not* subject to the TCPA.

***Second***, plaintiff lacks standing to assert a TCPA claim for the subject calls.  The calls were directed to a third party (Ms. Derossett) and plaintiff was an unintended

2

recipient of the subject calls. Moreover, the cellular number being called was associated with plaintiff's step-father's account; plaintiff was not the telephone subscriber.

*Third*, NCO did not violate the TCPA by calling the 0113 number because that number was provided by the debtor (Ms. Derossett) to St. Joseph. It is well settled that a debt collector does not violate the TCPA by calling for a debtor at a telephone number the debtor provided to the creditor. *See, e.g., In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 559 at ¶ 1 ("In this ruling, we clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."). The debtor (Ms. Derossett) provided the 0113 number to St. Joseph as a contact number at which she could be reached. In light of this undisputed fact, NCO did not violate the TCPA by calling for the debtor at the 0113 number. Simply put, the calls were made with consent.

*Fourth*, plaintiff never expressly withdrew consent to call the 0113 number. The undisputed facts confirm plaintiff never instructed NCO to stop calling the 0113 number. And, although plaintiff appears to believe consent to call the 0113 number was implicitly or constructively withdrawn when plaintiff acquired the 0113 number by the time NCO's calls commenced in 2009, that contention is unavailing. TCPA consent can *not* be withdrawn tacitly; it can only be withdrawn expressly.

## II. FACTUAL AND PROCEDURAL HISTORY

Pursuant to Local Rule 56.1, NCO is filing a response to plaintiff's statement of

material facts and a statement of additional material facts contemporaneously with this memorandum ("SAMF").

On April 23, 2010, Ashley Walls filed her Complaint. *SAMF, ¶ 30.* Plaintiff asserts three counts. In Count 1, plaintiff asserts a TCPA claim. *Id.* Plaintiff alleges NCO violated the TCPA by calling her "multiple times" on her cellular telephone in relation to a debt she did not owe. *Id.* In Count 2, plaintiff asserts a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and Count III alleges a claim for invasion of privacy.

On June 22, 2010, NCO filed its answer and affirmative defenses.

On August 31, 2011, NCO and plaintiff settled plaintiff's FDCPA claim. Plaintiff has also voluntarily withdrawn her invasion of privacy claim. *Plaintiff's deposition, p. 56.* At this time, NCO seeks judgment in its favor on plaintiff's remaining TCPA count.

### III. LAW AND ARGUMENT

#### A. The TCPA Does Not Apply To Non-Telemarketers Such As NCO

"In 1991, Congress amended the Communications Act of 1934, 47 U.S.C. § 201, *et seq.*, with the enactment of the [TCPA], Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227)." *International Science & Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1150 (4th Cir. 1997). "[T]he TCPA seeks to deal with an increasingly common nuisance—*telemarketing.*" *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 514 (3d Cir. 1998) (emphasis added). "In the TCPA, Congress found that unrestricted telemarketing can be an intrusive invasion of privacy and that many consumers are outraged by the proliferation of intrusive calls to their homes from

4

*telemarketers.*" *F.T.C. v. Mainstream Marketing Services, Inc.*, 345 F.3d 850, 857 (10th Cir. 2003) (*citing* Pub. L. No. 102-243, at § 2) (emphasis added). As the Second Circuit has explained, "[w]hile more than forty state legislatures previously enacted measures restricting unsolicited telemarketing, 'these had limited effect because States do not have jurisdiction over interstate calls.'" *Bonime v. Avaya, Inc.*, 547 F.3d 497, 499 (2d Cir. 2008). The legislative history of the TCPA "indicates that Congress intended the TCPA to provide interstitial law preventing evasion of state law by calling across state lines." *Id.* (citation omitted).

The FDCPA, *not the TCPA*, was enacted by Congress to, *inter alia*, eliminate abusive debt collection practices by debt collectors. *Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756, *5 (W.D. N.Y. 2010); *see also, Garo v. Global Credit & Collection Corp.*, 2010 WL 5108605, *2 (D. Ariz. 2010) ("To the extent then that the automatic calls were debt collection calls, as the [Second Amended Complaint] alleges, Plaintiffs do not state a claim under the TCPA.").

NCO is *not* a telemarketer and does not use automated calling or messaging technology to advertise or solicit business. *SAMF, ¶ 1.* Plaintiff does not allege NCO is a telemarketer. As such, while NCO's debt collection activities may be generally subject to the restrictions set forth in the FDCPA, the debt collection telephone communications that are at issue in plaintiff's Complaint are *not* subject to the TCPA.

## B.  Plaintiff Does Not Have Statutory Standing To Assert Her TCPA Claims

Several courts have ruled only the "called party" has statutory standing to assert a TCPA claim. According to these courts, the "called party" is the intended recipient of the

call, or the person to whom the call was directed—in other words, the person the company was trying to reach. *See, e.g., Cellco Partnership v. Dealers Warranty, LLC*, 2010 WL 3946713, *9-10 (D. N.J. 2010) (dismissing the plaintiff's TCPA claim because the plaintiff was not "the party to whom the call [was] directed" or "intended recipient of the call"); *Leyse v. Bank of America, Nat. Ass'n*, 2010 WL 2382400, *4 (S.D. N.Y. 2010) (dismissing the plaintiff's TCPA claim because the plaintiff was not the "called party" or intended recipient of the call); *Balbarin v. North Star*, 2011 WL 211013 (N.D. Ill. 2011) (applying *Leyse* and *Cellco*).

One court has ruled only the telephone subscriber has standing. *See Gutierrez v. Barclays Group*, 2011 WL 579238, * 5 (S.D. Cal. 2011) ("[T]he TCPA is intended to protect the telephone subscriber, and thus it is the subscriber who has standing to sue for violations of the TCPA.").

It is undisputed that NCO was trying to reach the debtor, Ms. Derossett. *SAMF, ¶¶ 25-26*. In light of this fact, Ms. Derossett is the "called party" and plaintiff lacks standing to assert her TCPA claim. Even if standing were extended to the telephone subscriber, plaintiff would still lack standing because she is not the subscriber for the 0113 number. *SAMF, ¶ 31*.

## C. NCO Had The Called Party's Consent To Call And That Consent Was Never Revoked

Even if the Court ruled TCPA standing is not limited to the "called party" or telephone subscriber, plaintiff's TCPA claims would still fail. There cannot be a TCPA violation if the cell phone call is "made with the prior express consent of the called

party." *47 U.S.C. § 227(b)(1)(A)(iii)*.  As to cell phones, the TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or *made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

*47 U.S.C. § 227(b)(1)(A)(iii)* (emphasis added).

As the emphasized language indicates, a cell phone call does *not* violate the TCPA if the call is "made with the prior express consent of the called party."  *Id.*  The TCPA does not include a definition for the phrases "prior express consent" or "called party." However, the Federal Communications Commission ("FCC"), the agency with rulemaking authority under the TCPA,  has issued several orders interpreting these phrases.  For example, in a 2008 order, the FCC declared the following:

> Because we find that autodialed and prerecorded message calls *to wireless numbers provided by the called party* in connection with an existing debt are made with the "prior express consent" *of the called party*, we clarify that such calls are permissible.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564 at ¶ 9 (emphasis added).

> [W]e clarify that autodialed and prerecorded message calls *to wireless numbers* that are *provided by the called party* to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" *of the called party*.

*Id.* at 559, ¶ 1 (emphasis added).

> IT IS FURTHER ORDERED that . . . autodialed and prerecorded message calls *to wireless numbers* that are *provided by the called party* to a creditor

in connection with an existing debt are permissible as calls made with the "prior express consent" *of the called party* . . . .

*Id*. at 568, ¶ 17 (emphasis added).

These FCC pronouncements make clear that a debt collector can lawfully autodial a cell number for a debtor if the debtor provided the number to the creditor. That is precisely what occurred here. Further, these FCC pronouncements make clear consent is tied to the number--not a particular person. The FCC did not rule calls to the debtor are made with consent; instead, the FCC ruled calls "to wireless numbers" are made with consent. This distinction proves consent is tied to the number, not the person. And, as several courts have noted, the district courts must follow and apply these orders relating to consent. *See*, *e.g.*, *Greene v. DirecTv, Inc.*, 2010 WL 4628734, *3 (N.D. Ill. 2010) ("The Federal Communications Commission . . . has clarified what constitutes 'express consent' under the statute pursuant to its authority to create rules and regulations implementing the TCPA. . . . A district court must accept the FCC's interpretation of the TCPA as expressed in their regulations and orders."); *CE Design Ltd. v. Prism Business Media, Inc.*, 2009 WL 2496568 (N.D. Ill. 2009). The Court must follow and apply the FCC's orders relating to consent per the Hobbs Act, 28 U.S.C. § 2342.[1]

The undisputed evidence establishes NCO had consent to call the 0113 number. St. Joseph retained NCO to collect a debt. *SAMF, ¶ 20*. The debt was owed by "Jessica Derossett" to St. Joseph. *SAMF, ¶ ¶ 18-19*. In May 2005, when Ms. Derossett was

---

[1] The Hobbs Act "vests the courts of appeals with exclusive jurisdiction to review certain orders issued by the Federal Communications Commission[.]" *Illinois Bell Telephone Co. v. F.C.C.*, 740 F.2d 465, 467 (7th Cir. 1984).

treated at St. Joseph, she provided the 0113 number as a contact number at which she could be reached. *SAMF, ¶ 23*. When St. Joseph placed the account with NCO, St. Joseph identified the 0113 number as the "home" number at which Ms. Derossett could be reached. *SAMF, ¶ 22*. NCO called the 0113 number in an attempt to reach Ms. Derossett. *SAMF, ¶ 26*.

As noted, the debtor, Ms. Derossett, was the "called party," *i.e.*, the intended recipient of NCO's calls on the St. Joseph account. *SAMF, ¶ 26*. Considering Ms. Derossett provided the 0113 number to St. Joseph (the creditor) as a contact number on her account, NCO had consent to call the number on behalf of St. Joseph.

As the FCC has ruled, "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *23 FCC Rcd. at 559, ¶ 1*. Contrary to plaintiff's contentions, NCO did *not* violate the TCPA by calling the 0113 number.

Further, consent to call the 0113 number was never withdrawn. Neither plaintiff nor Jessica Derossett ever told NCO or St. Joseph to stop calling the 0113 number. *SAMF, ¶ 29*. The only person who knew the calls were going to the wrong person was plaintiff, *yet she did nothing to stop the calls*.

Plaintiff apparently believes the calls violated the TCPA simply because the debtor that NCO was attempting to reach (Ms. Derossett) was no longer associated with the 0113 number when NCO began calling. In essence, plaintiff argues consent to call the 0113 number was implicitly or constructively withdrawn when she acquired the 0113

9

number. Plaintiff is incorrect. Consent cannot be withdrawn tacitly, constructively, or implicitly—consent can *only* be withdrawn *expressly*.

Plaintiff argues that the consent provided by Ms. Derossett was withdrawn constructively by operation of plaintiff's outbound voice mail greeting, which allegedly stated that the caller had reached "Ashley Walls." *Plaintiff's memorandum, p 1*. Plaintiff's argument is unavailing both legally and factually. First, this argument presupposes that only 1 person uses a given telephone number, and ignores the possibility that multiple people can use a single telephone number and voice mail service. Second, plaintiff ignores the common use of nicknames, aliases, name changes, or maiden names. NCO would have no reason to know that Ashley Walls was not related to or an alternate name for Jessica Derossett because plaintiff never told NCO it was calling the wrong person. *SAMF, ¶ 29*. Finally, as discussed above, plaintiff's argument ignores the critical requirement that consent be expressly withdrawn. A constructive withdrawal of consent under the TCPA is not effective.

Plaintiff's argument also fails to recognize that consent is tied to the number, *not* the person. A debt collector does *not* violate the TCPA by calling a number the debtor provided to the creditor, even if someone other than the debtor happens to own the phone or answer the call. *See, e.g., Leyse*, 2010 WL 2382400 at *4 ("If the business is liable to whomever happens to answer the phone . . ., a business could face liability even when it intends in good faith to comply with the provisions of the TCPA."). If the person answering the phone wants the calls to stop, she should simply ask the person calling to stop. As explained above, plaintiff never requested the calls stop. Instead, she chose to

run to federal court and file this lawsuit against NCO, seeking statutory "damages" of $500-$1,500 per call.

Plaintiff contends that the consent obtained by St. Joseph and NCO is not sufficient, relying on *Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681 (N.D. Ill. 2011). *Soppet* is not controlling for 2 reasons. First, after denying defendant's motion for summary judgment, Judge Kennelly granted defendant's petition to allow an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), concluding that "reasonable minds could differ" regarding whether there was consent for making the calls. *See Soppet v. Enhanced Recovery Company*, Case No. 10 CV 5469 (Sept. 27, 2011) [doc 84], attached hereto as Exhibit A. Second, the *Soppet* petition for leave to appeal is currently pending in the Seventh Circuit. On this procedural record, *Soppet* is of no value.

Plaintiff has failed to demonstrate that she was the subscriber to a cellular telephone number that NCO called in violation of the TCPA. Simply stated, NCO had consent from the person it was trying to reach. NCO was, therefore, permitted to continue calling the 0113 number until told to stop. On January 21, 2010, an unidentified person told NCO they were calling the wrong number. *SAMF, ¶ 28.* NCO did not call the number again. Because NCO had consent to call the 0113 number up until January 21, 2010, this Court should grant NCO's summary judgment motion, deny plaintiff's summary judgment motion, and enter judgment in NCO's favor.

## D. Plaintiff Has Failed To Show That The Calls Were Made With An Automatic Telephone Dialing System Or With A Pre-Recorded Or Artificial Voice

Assuming, *arguendo*, that the Court concludes plaintiff has standing and NCO did

not have consent to call the 0113 number, plaintiff's summary judgment motion would still fail. To succeed on her TCPA claim, plaintiff must show NCO called her cellular telephone number with an "automatic telephone dialing system." *Dobbin v. Wells Fargo Auto Finance, Inc.*, 2011 WL 2446566, * 2 (N.D. Ill. 2011). An automatic telephone dialing system ("ATDS") is a statutorily defined term, meaning "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *47 U.S.C. § 227(a)(1)*.

The term "random or sequential number generator" is not defined in the statute. However, as interpreted by the FCC, equipment is considered an ATDS if it can make calls "without human intervention." *See 18 FCC Rcd 14014, 14092.* Here, plaintiff has failed to produce any evidence that NCO called plaintiff on equipment without any human intervention. The deposition testimony of Greg Stevens cited by plaintiff does not support plaintiff's argument. In fact, Mr. Stevens testified that NCO's Guaranteed Contacts (GC) dialer can operate in 2 different modes. *SAMF Response, ¶ 8.* In the manual mode, an employee uses the dialer like a telephone and initiates the telephone call by physically dialing the digits and instructing the dialer which number to call. The employee must tell the dialer which number to call. *Id.* In the second mode, the GC dialer calls telephone numbers in campaigns that are established by employees with criteria determined by the employee, initiated by the employee and managed by the employee. *Id.* In either mode, the dialing of numbers cannot be done without human intervention. *Id.*

Plaintiff has also failed to produce evidence that the calls made to the 0113

number by NCO's vendor, Soundbite, were made with an ATDS. Soundbite is a third party vendor that places calls on behalf of NCO. *SAMF Response, ¶ 9.* No discovery has been taken regarding the capabilities of the Soundbite dialer and plaintiff has produced no evidence that the equipment used by Soundbite has the capability to dial telephone numbers without human intervention.

In *Dobbin*, the plaintiffs alleged the defendant "manually" dialed their cell phones through a predictive dialer in violation of the TCPA. Defendant moved for summary judgment, contending the plaintiffs were unable to show the calls were dialed by equipment covered by the TCPA. In granting defendant's motion, the Court noted the plaintiffs failed to provide any evidence that defendant called a cellular number with "equipment that meets the statutory definition" of an automatic telephone dialing system. *Id.*, 2011 WL 2446566, * 4.

Like *Dobbin*, there is no competent evidence that NCO called plaintiff through an ATDS. Plaintiff has failed to produce any evidence that the dialing equipment used by NCO or Soundbite could dial any numbers using a random or sequential number generator. Plaintiff has also failed to produce any evidence that the dialing equipment was able to place calls without human intervention. As there are genuine issues of material fact related to the capabilities of the dialing equipment, plaintiff's summary judgment motion must be denied. *See also Pollock v. Island Arbitration & Mediation Inc.*, 869 N.Y.S.2d 740, 744-45 (N.Y. City Ct. 2008) ("Since the plaintiff did not establish that the defendant used a dialing system which randomly or sequentially generated telephone numbers, the plaintiff cannot establish that the defendant placed a

call to a cellular telephone using an automatic telephone dialing system pursuant to 47 USC § 227(b)(1)(A)(iii).").

The same result is required related to plaintiff's claim for an unlawful use of a prerecorded voice. The TCPA prohibits the use of "an artificial or prerecorded voice" when calling cellular phones. *47 U.S.C. § 227(b)(1)(A)*. Plaintiff has failed to demonstrate that the messages used by NCO were made with an artificial or prerecorded voice. "A call made by an artificial or prerecorded voice has no potential for a real time voice intercommunication." *Joffe v. Acacia Mortgage Corp*., 211 Ariz. 325, 330, 121 P.2d 831, 836 (Ariz. Ct. App. 2006). Plaintiff's summary judgment motion must be denied because plaintiff has failed to demonstrate an absence of a genuine issue of material fact related to the use of an artificial or pre-recorded voice.

## IV. CONCLUSION

Considering the foregoing, the Court should deny plaintiff's Motion for Summary Judgment, grant NCO's Cross Motion for Summary Judgment, and dismiss plaintiff's TCPA claim with prejudice and at plaintiff's cost.

Respectfully submitted,


/s/ James K. Schultz
Attorney for NCO Asset Management, Inc.

James K. Schultz
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
55 West Monroe St., Suite 1120
Chicago, IL 60603
Telephone: 312-578-0990
Facsimile: 312-578-0991
jschultz@sessions-law.biz

Bryan C. Shartle
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3850 N. Causeway Blvd., Suite 200
Metairie, LA  70002
Telephone: 504-828-3700
Facsimile: 504-828-3737
bshartle@sessions-law.biz

Attorneys for NCO Financial Systems, Inc.

## CERTIFICATE OF SERVICE

I certify that on October 20, 2011, a copy of the foregoing memorandum was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel, as described below. Parties may access this filing through the Court's system.

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
aburke@burkelawllc.com


/s/ James K. Schultz
Attorney for NCO Financial Systems, Inc.


\\sfnfs02\prolawdocs\6947\6947-25938\Walls, Ashley\579681.doc