# Appendix 1

*Tang v. Medical Recovery Specialists, LLC*, NO. 11 C 2109, 2011 WL 6019221(N.D.Ill. Jul 07, 2011) Holderman, J.

Slip Copy, 2011 WL 6019221 (N.D.Ill.)
**(Cite as: 2011 WL 6019221 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois.
Loidy TANG
v.
MEDICAL RECOVERY SPECIALISTS, LLC.

No. 11 C 2109.
July 7, 2011.

### STATEMENT

JAMES F. HOLDERMAN, Judge.

**\*1** On March 28, 2011, plaintiff Loidy Tang ("Tang"), individually and on behalf of a class, filed a class action complaint (Dkt. No. 1 ("Compl.")) against defendant Medical Recovery Specialists, LLC ("Medical Recovery") asserting claims for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (Count II). Currently before the court is Medical Recovery's "Motion to Dismiss Complaint" (Dkt. No. 15 ("Medical Recovery's Mot")). Specifically, Medical Recovery argues that Tang lacks standing to pursue her claims under both § 227 of the TCPA and § 1692e(14) of the FDCPA and has failed to state a claim under § 1692d(6) of the FDCPA. For the reasons explained below, Medical Recovery's Motion is denied.

### BACKGROUND

The following are the facts of this case viewing the allegations in the complaint in the light most favorable to Tang. See *Cole v. Milwaukee Area Tech. Coll. Dist.,* 634 F.3d 901, 903 (7th Cir.2011).

Tang is a subscriber for a cellular telephone which is assigned the telephone number XXX–XXX–8483. (Compl.¶¶ 8–9.) The cellular telephone service is in Tang's name, and Tang pays for the service. (*Id.* ¶ 9.) Medical Recovery uses a "Predictive Dialer" which is capable of dialing telephone numbers without human intervention and delivering an automated prerecorded message. (*Id* . ¶¶ 10–11.) At approximately 4:39 p.m. on March 25, 2011, Medical Recovery placed a telephone call to Tang's telephone number. (*Id.* ¶ 17.) Tang received the following message on her telephone:

> This is an important message for [ELLE—WILE–N–DEE–A–VASI]. If this is not [ELLE—WILE–N–DEE–A–VASI] please hang up or delete this message. If this is [ELLE—WILE–N–DEE–A–VASI] please remain on the line. There will now be a three second pause. By continuing to listen to this message you acknowledge that you are [ELLE—WILE–N–DEE–A–VASI]. This is MRS calling on behalf of our client concerning you [sic] outstanding balance in an attempt to collect a debt and any information obtained will be used for that purpose. To pay this outstanding balance by Visa, Master Card or Check please use our auto-payment system by following the prompt provided. Should you have any questions and or concerns please call us at, toll-free at [877–263–6752]. When calling please reference MRS file number [7905870]. Again the number to call is toll-free at [877–263–6752][.] Please reference MRS file number [7905870]. Good bye.

(*Id.* ¶ 20.) The message contained a different voice when announcing the name "ELLE—WILE–N–DEE–A–VASI" (phonetic), the toll-free number "877–263–6752," and the file number "7905870." (*Id.* ¶ 21.)

### LEGAL STANDARDS
I. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Although the complaint need not contain "detailed factual allegations," "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.' " *Cole v. Milwaukee Area Tech. Coll. Dist.,* 634 F.3d 901, 903 (7th Cir.2011) (quoting *Justice v. Town of Cicero,* 577 F.3d 768, 771 (7th Cir.2009)). In ruling on a Rule 12(b)(6) motion, the court "construe [s] the ... [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in [her] favor." *Id.*

II. Rule 12(b)(1) Motion to Dismiss for Lack of Standing

**\*2** "Standing is an essential component of Article III's case or controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir.2009). Standing involves the question of "whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Id.* (quoting *Perry v. Vill. of Arlington Heights,* 186 F.3d 826, 829 (7th Cir.1999)). Because standing is a jurisdictional requirement, "the plaintiff bears the burden of establishing standing." *Id.* Where, as here, the defendant raises only a facial challenge to the plaintiff's standing, the court does not look beyond the allegations in the plaintiff's complaint and assumes that those allegations are true for purposes of ruling on the motion. *Id.* at 443–44.[FN1]

> FN1. When raising a "facial challenge" to a plaintiff's standing, a defendant is arguing that, even assuming the allegations in the complaint are true, those allegations are "purportedly insufficient to establish injury-in-fact." *Apex,* 572 F.3d at 443–44. In a "factual challenge," on the other hand, "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* (quoting *U. Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir.2003)).

*ANALYSIS*

Medical Recovery has moved to dismiss both Tang's TCPA and FDCPA claims. The court will address each claim in turn.

I. Tang's TCPA Claim

Under § 227(b)(1) of the TCPA,

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or *made with the prior express consent of the called party* ) using any automatic telephone dialing system or an artificial or prerecorded voice—...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call ....

47 U.S.C. § 227(b)(1) (emphasis added).

Medical Recovery argues that Tang lacks standing to bring a claim under the TCPA because she was not the "intended recipient" of the telephone call at issue. According to Medical Recovery, under § 227(b)(1) only the "called party" has standing to bring claim, and the "called party" refers to the "intended recipient" of the call, i.e., "the person the defendant was trying to contact." (Dkt. No. 16 ("Medical Recovery's Mem.") at 6.) In this case, because Tang admits that the party Medical Recovery intended to call was "ELLE—WILE–N–DEE–A–VASI" as opposed to Tang, Medical Recovery argues that Tang lacks standing to bring a claim. The court disagrees.

Judge Kocoras of this district recently ad-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

dressed this same issue in *Tang v. William W. Siegel & Associates,* No. 11 C 599, 2011 WL 2356390 (N.D.Ill. June 14, 2011). This court is persuaded by Judge Kocoras's reasoning in *Tang* and adopts it here. Specifically, in *Tang,* Judge Kocoras rejected the defendant's argument that only the "called party"—interpreted by the defendant in *Tang* as referring to the party the defendant "intended to call"—had standing to sue under § 227(b)(1). Judge Kocoras explained that "called party," as that term appears in § 227(b)(1) of the TCPA, does not define who has standing to sue, but rather refers to the statute's limited exception for calls made with the "prior consent of the called party." *See* 47 U.S.C. § 227(b)(1)(A). Accordingly, a plaintiff suing under § 227(b)(1) need not be a "called party." *Tang,* 2011 WL 2356390, at *2. Moreover, even assuming that being a "called party" was a requisite to establish standing, Judge Korcoras further found that the plaintiff was in fact the "called party" because the defendant "intended to call Plaintiff's cellular telephone number and Plaintiff is the regular user and carrier of the phone." *Id.*

***3** Similarly in this case, Tang has alleged sufficient facts to establish her standing to sue under the TCPA. She alleges that Medical Recovery used a "predictive dialer" to leave a prerecorded message on her phone without her prior consent. (Compl.¶¶ 10, 17–21, 28.) Whether Medical Recovery mistakenly believed that a different individual was the subscriber of the cellular telephone number assigned to Tang does not impact Tang's standing to sue. Consequently, Medical Recovery's Motion to Dismiss Tang's TCPA claim is denied.

II. Tang's FDCPA Claims

Medical Recovery has also moved to dismiss Tang's §§ 1692d(6) and 1692e(14) FDCPA claims. First, under § 1692d(6), "the placement of telephone calls without meaningful disclosure of the caller's identify" constitutes a violation of the FDCPA. 15 U.S.C. § 1692d(6). Medical Recovery argues that Tang has failed to state a claim under § 1692d(6) of the FDCPA because "[a] call to a wrong number is not even close to rising to the level of harassment" and Tang has not "alleg[ed] any conduct on the part of the defendant intended to harass or oppress" her. (Medical Recovery's Mem. 10.) The court disagrees.

Tang alleges that Medical Recovery identified itself as "MRS" which is not Medical Recovery's registered business name (Compl.¶¶ 44–45), and consequently "failed to make a meaningful identification of its business name" (*id.* ¶ 3). In enacting § 1692d(6), Congress determined that placing telephone calls "without meaningful disclosure of the caller's identity" constituted sufficiently harassing or oppressive conduct to violate the FDCPA. Based on the plain language of the statute, the court finds that Tang's allegations are sufficient to state a claim under § 1692d(6).

Second, regarding Tan's § 1692e(14) claim, that provision of the FDCPA provides:

> A debt collector may not use any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ... (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

15 U.S.C. § 1692e(14). Although Medical Recovery contends that Tang has "failed to state a claim" under § 1692e(14), it appears to be arguing that Tang lacks standing to pursue this claim because she is not the "debtor." (*See* Medical Recovery's Mem. 11 (discussing "standing under the FDCPA").) Again, the court disagrees. Section 1692k(a) of the FDCPA explains that "any person" who has been subject of one of the enumerated FDCPA violations can sue for damages under the statute: "Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title *with respect to any person is*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

*liable to such person ....*" 15 U.S.C. § 1692k(a) (emphasis added). Section 1692e(14) of the FDCPA similarly does not limit violations to calls made to a "debtor" but instead simply requires that the call be made "in connection with the collection of any debt."

**\*4** Based on the allegations in the complaint, the court finds that Tang has standing to pursue a claim under § 1692e(14) of the FDCPA. Tang is a "person" who purportedly received a recorded statement from Medical Recovery related to a collection of an outstanding debt. (*See* Compl. ¶ 20.) Tang further alleges that Medical Recovery identified itself as "MRS" which is not Medical Recovery's registered business name (*id.* ¶¶ 44–45), and consequently "attempted to collect the debt using the name of another debt collector" (*id.* ¶ 3). The allegations are sufficient to establish Tang's standing to sue under § 1692e(14) of the FDCPA. Medical Recovery's Motion to Dismiss Tang's FDCPA claims accordingly is denied.

N.D.Ill.,2011.
Tang v. Medical Recovery Specialists, LLC
Slip Copy, 2011 WL 6019221 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Appendix 2

*D.G. vs. Diversified Adjustment Service, Inc.*, case no. 1:11-cv-2062, 2011 WL 5506078 (N.D.Ill. Oct. 18, 2011) Lefkow, J.

Slip Copy, 2011 WL 5506078 (N.D.Ill.)
**(Cite as: 2011 WL 5506078 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois.
D.G.
v.
DIVERSIFIED ADJUSTMENT SERVICE, INC.

No. 11 C 2062.
Oct. 18, 2011.

Curtis Charles Warner, Warner Law Firm, LLC, Chicago, IL, for D.G.

David M. Schultz, James Constantine Vlahakis, Hinshaw & Culbertson, Chicago, IL, for Diversified Adjustment Service, Inc.

**STATEMENT**
JOAN H. LEFKOW, Judge.

*1 D.G. (a minor) by and through Loidy Tang, filed this putative class action against Diversified Adjustment Service, Inc. ("Diversified"), alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Before the court is Diversified's motion to dismiss for lack of statutory standing pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion [# 11] will be denied.

*Background*
D.G. is the primary user of a cell phone which is assigned the telephone number XXX–XXX–3757. (Compl.¶ 6). D.G.'s mother, Tang, pays for the cell phone service. (*Id.* ¶ 8). Diversified is a debt collection agency that uses a predictive dialer to call telephone numbers and leave automated prerecorded voice messages. (*Id.* ¶ 8–9). Diversified's predictive dialer is programmed to dial telephone numbers that have been entered into a database. It dials these numbers in sequence and is programmed to detect an answered call and transfer the call to a live operator in less than one second.

On March 23, 2011, Diversified called D.G.'s cell phone. (*Id.* ¶ 17). D.G. did not recognize the caller-id number and handed the phone to Tang, who answered the call. Tang heard a prerecorded message stating that Diversified was looking for Chivette Nelson and that Nelson should call Diversified's toll-free telephone number. (*Id.* ¶ 21). On information and belief, Diversified obtained the number XXX–XXX–3757 by using a skip tracer for Chivette Nelson. D.G. does not know Chivette Nelson and did not consent to Diversified's call. (*Id.* ¶ 2).

*Legal Standard*
Diversified argues that the complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6). Diversified's motion rests on the theory that the TCPA does not provide D.G. with a claim. This question is one of "statutory standing" and is properly evaluated under Rule 12(b)(6) because it does not implicate the court's statutory or constitutional power to adjudicate the case. *See Kohen v. Pacific Inv. Mgmt. Co. LLC,* 571 F.3d 672, 677 (7th Cir.2009); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 90, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997). In reviewing a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon v. Page,* 291 F.3d 485, 486–87 (7th Cir.2002). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with notice of the claims and establish that the requested relief is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). At the same

time, the plaintiff need not plead legal theories. *Hatmaker v. Mem'l Med. Ctr.,* 619 F.3d 741, 742–43 (7th Cir.2010). Rather, it is the facts that count.

*Analysis*

**\*2** Diversified argues that the TCPA does not provide D.G. with a cause of action because D.G. was not the intended recipient of the automated call. The TCPA makes it unlawful for any person

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent *of the called party* ) using any automatic telephone dialing system or an artificial or prerecorded voice—...
>
> > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service *for which the called party is charged* for the call;
>
> (B) to initiate any telephone call to any residential telephone using an artificial or prerecorded voice to deliver a message without the prior express consent *of the called party,* unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission ....

47 U.S.C. § 227(b)(1) (emphasis added). Significantly, the statute does not define the term "called party." As Diversified interprets the TCPA, the term must refer to the intended recipient of an automated phone call, in this case, Chivette Nelson. Diversified concludes that the TCPA does not afford a cause of action for D.G. because he was not the intended recipient of the call.

The issue presented is one of statutory interpretation, and the court may look to the TCPA's language, structure, and legislative history. *See Mallett v. Wisc. Div. of Vocational Rehab.,* 130 F.3d 1245, 1250 (7th Cir.1997). Diversified's argument is clearly contrary to the section of the TCPA that creates a private right of action. That section provides that "[a] person or entity" may bring an action "based on a violation" of the prohibition on the use of automated dialers so long as the action is "otherwise permitted by the laws or rules of court of a State." 47 U.S.C. § 227(b)(3). Nothing in this provision indicates that a private right of action is limited to the "called party."

D.G.'s complaint alleges that Diversified used an automated dialer to call his cell phone and leave a prerecorded message without his consent. As such, he was the called party. Thus the complaint has alleged facts sufficient to establish a violation of the TCPA. Under the statute's broadly-worded right of action provision, D.G. can bring a claim against Diversified. *See D.G. v. William W. Siegel & Assocs.,* 791 F.Supp.2d 622, 2011 WL 2356390, at \*1 (N.D.Ill. Jun.14, 2011) (unintended recipient of call has standing to sue under TCPA); *Soppet v. Enhanced Recovery Co.,* No. 10 C 5469, 2011 WL 3704681, at \*2 (N.D.Ill. Aug.21, 2011) (same); *Tang v. Med. Recovery Specialists, LLC,* No. 11 C 2109, slip op. at 3 (N.D.Ill. Jul. 7, 2011) (same); *Anderson v. AFNI, Inc.,* No. 10–4064, 2011 WL 1808779, at \*7–8 (E.D.Pa. May 11, 2011) (same); *but see Cellco P'ship v. Dealers Warranty, LLC,* No. 09–1814, 2010 WL 3946713, at \*9 (D.N.J. Oct.5, 2010) (only the person to whom the call is directed has standing under the TCPA); *Leyse v. Bank of Am., Nat'l Ass'n,* No. 09 Civ. 7654(JGK), 2010 WL 2382400, at \*4 (S.D.N.Y. Jun.14, 2010) (same).

**\*3** In addition, the language and structure of the TCPA indicate that the term "called party" refers to the actual recipient and not the intended recipient of a call. The term first appears in section 227(b)(1) where the statute sets forth the affirmative defense of express consent. *See* 47 U.S.C. § 227(b)(1) (automated calls are prohibited unless they are made with the "express consent of the called party"). Section 227(d), which describes the technical and procedural standards for fax machines and automated dialing systems, also uses the term "called party." It provides that any system must

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

"automatically release the *called party's* line within 5 seconds of the time notification is transmitted to the system that *the called party* has hung up, to allow *the called party's* line to be used to make or receive other calls." 47 U.S.C. § 227(d) (emphasis added). Section 227(d)'s "use[ ] of 'called party' is a clear reference to the actual recipient of a call-it requires establishment of a standard that will release the call recipient's line under particular circumstances." *Soppet,* 2011 WL 3704681, at *2. The court presumes that Congress intended that the term "called party" would have the same meaning in section 227(b)(1) as it does in section 227(d). *Id.* (citing *Perry v. First Nat'l Bank,* 459 F.3d 816, 820–21 (7th Cir.2006)). Therefore the actual recipient of the call, D.G., is the "called party."

Diversified cites *Cellco* and *Leyse* in support of its argument that the unintended recipient of a call does not have standing under the TCPA. Both cases are factually distinguishable and, to the extent that they offer interpretations of the TCPA that extend to situations other than the facts presented, the court respectfully disagrees with the reasoning therein. In *Leyse,* a marketing service attempted to call the primary user and subscriber of a residential telephone line on behalf of Bank of America. It was undisputed that the primary user was associated with the phone number listed in the marketing service's records and that the primary user was also the subscriber to the phone line. The user's roommate answered the call. 2010 WL 2382400, at *2. The court dismissed the roommate's complaint against Bank of America on the grounds that he was an unintended and incidental recipient of a valid call. *Id.* at *4. Here, Diversified did not have consent to call the phone number associated with Chivette Nelson and D.G. was the regular user of the number that was called. In *Cellco,* two service providers, Verizon Wireless and OnStar, brought claims on behalf of subscribers who had allegedly received over eight million unsolicited telemarketing calls. 2010 WL 3946713, at *2. D.G., in contrast, received the call from Diversified and is bringing a claim on his own behalf.[FN1]

FN1. In addition, both *Cellco* and *Leyse* cite *Kopff v. World Research Group, LLC,* 568 F.Supp.2d 39 (D.D.C.2008), for the proposition that only the intended recipient of a call has a cause of action under the TCPA. *Kopff* held that an administrative assistant who picked up a fax from an office fax machine could not bring a TCPA claim when the fax was clearly addressed to the president of the company. The court noted that it "might think otherwise were the faxes addressed generically— *e.g.* to 'Employee of Heritage Management'—or were they not addressed at all." 568 F.Supp.3d at 41. *Kopff* does not address whether an unintended recipient of a call can bring a TCPA claim and, as the quoted language suggests, the court might have decided the issue differently were it not clear that the fax was addressed to someone other than the plaintiff.

Diversified also argues that it would be unduly burdensome for defendants to prove that they had consent from the intended recipients of every call. The Federal Communications Commission has made clear, however, that consent is an affirmative defense that is not part of a plaintiff's *prima facie* case under the TCPA. *See* 23 F.C.C.R. 559, 565 (Dec. 28, 2007) ("To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent."). Thus the burden rests on the defendant to show that it obtained consent. *Id.* Diversified's argument is without merit.

**\*4** For the foregoing reasons, Diversified's motion to dismiss [# 11] is denied.

N.D.Ill.,2011.
D.G. v. Diversified Adjustment Service, Inc.
Slip Copy, 2011 WL 5506078 (N.D.Ill.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Appendix 3

*Kane v. National Action Financial Services, Inc.,* case no. 11-CV-11505, 2011 WL6018403 (E.D.Mich. Nov. 7, 2011)

Slip Copy, 2011 WL 6018403 (E.D.Mich.)
**(Cite as: 2011 WL 6018403 (E.D.Mich.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Michigan,
Southern Division.
Michael KANE, Plaintiff,
v.
NATIONAL ACTION FINANCIAL SERVICES, INC., Defendant.

No. 11–cv–11505.
Nov. 7, 2011.

Julie A. Petrik, Ian B. Lyngklip, Southfield, MI, Melissa A. Gould, Troy, MI, for Plaintiff.

Robert G. Kamenec, Thomas P. Vincent, Plunkett & Cooney, Bloomfield Hills, MI, for Defendant.

***ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS*** *(docket no. 8)*
STEPHEN J. MURPHY, III, District Judge.

### INTRODUCTION

**\*1** This is a putative class action filed by Michael Kane ("Mr.Kane") against National Action Financial Services ("NAFS"), asserting violations of two federal acts: (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and (2) the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. Mr. Kane contends that the Acts were violated when NAFS initiated a series of "several hundred phone calls" using automated recorded messages to Mr. Kane's cell phone for the purpose of collecting a debt owed by Ms. Seana Bartlett to Blockbuster Video for video rentals.

The matter is before the Court on NAFS's June 10, 2011, Motion to Dismiss pursuant to Civil Rules 12(b)(1) and 12(b)(6). ECF. No. 8. For the reasons set forth below, the Court will dismiss Mr. Kane's claims under § 1692(e), and § 1692(f) of the FDCPA; but deny the motion to dismiss as to his claims under § 1692(d) of the FDCPA, and his claim under the TCPA.

### FACTS

The following facts are stated in the light most favorable to the plaintiff. *U.S. v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994); *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 274 (6th Cir.2010).

Defendant NAFS is a company located in the state of New York. NAFS acts as a collection agency on behalf of Blockbuster Video ("Blockbuster") to collect delinquent and defaulted accounts. Compl. ¶ 7. Sometime prior to 2009, Blockbuster engaged NAFS to collect a delinquent balance on an account opened by Ms. Seana Bartlett ("Ms.Bartlett") for video rentals. *Id.* at ¶ 18.

Mr. Kane is a resident of Oakland County. *Id.* at ¶ 3. He carries a cell phone for his personal use. *Id.* at ¶ 10. Mr. Kane does not know Ms. Bartlett, does not owe Blockbuster any rental fees, and has never given his cell phone number to Blockbuster, or granted Blockbuster permission to call the number. *Id.* at ¶ 16–17; 20. Nonetheless, over a four-year period, Mr. Kane received several hundred phone calls from NAFS to his cell phone, attempting to collect Ms. Bartlett's debt. *Id.* at ¶ 23–24.

In each call, NAFS used an "artificial or prerecorded voice" to communicate with Mr. Kane. *Id.* at ¶ 26. On occasion, Mr. Kane answered the calls and heard a prerecorded message. *Id.* at ¶ 27. The message did not notify Mr. Kane that the calls were from a debt collector. *Id.* at ¶ 28. Until August 2010, Mr. Kane was unable to contact a live person or otherwise request that the calls stop. *Id.* at ¶ 33–37. Specifically, each time Mr. Kane would contact NAFS, he would be directed to input his phone number before being transferred to an agent. Once he did so, however, he would receive an automated message indicating he was Ms. Seana Bartlett and that an alleged debt was owed. *Id.* at ¶ 36.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

In August of 2010, NAFS changed its incoming call system, and Mr. Kane was finally able to press a button on the phone to indicate that he was not the person NAFS intended to call. After this change was implemented, Mr. Kane stopped receiving calls. *Id.* at ¶ 37–38.

## STANDARD OF REVIEW

**\*2** NASF's motion to dismiss is brought under Civil Rules 12(b)(1) and 12(b)(6). Fed.R.Civ.P. 12(b)(1); 12(b)(6).

A. *Civil Rule 12(b)(1)*

Motions to dismiss under Civil Rule 12(b)(1) for lack of subject-matter jurisdiction fall into two general categories: facial attacks and factual attacks. U.S. v. Ritchie, 15 F.3d 592, 598 (6th Cir.1994). While a facial attack challenges the sufficiency of the pleading, a factual attack challenges the factual existence of subject matter jurisdiction. *Id.* Because NAFS's motion to dismiss is based on "the adequacy of the factual allegations set forth in Plaintiff's Complaint," it is a facial attack. Def.'s Mot. to Dismiss 1, ECF No. 8. A court considering a facial attack under Civil Rule 12(b)(1) must take the material allegations of the petition as true. O'Bryan v. Holy See, 556 F.3d 361, 379 (6th Cir.2009). If the allegations establish federal claims, then jurisdiction exists. *Id.* "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir.2005).

B. *Civil Rule 12(b)(6)*

To survive a motion to dismiss under Civil Rule 12(b)(6), the complaint need only contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " *Id.* at 557 (citations omitted). Accordingly, Civil Rule 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See* Minger v. Green, 239 F.3d 793, 797 (6th Cir.2001).

The Rule does not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all that is required is "a short and plain statement of the claim" that will give the defendant fair notice of the claim and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.' " Ass'n of Cleveland Fire Fighters v. Cleveland, 502 F.3d 545, 548 (6th Cir.2007) (quoting Bell Atlantic, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).

"The primary difference between Rule 12(b)(1) and 12(b)(6) motions is ... in the effect the ruling will have upon the parties." Ohio Nat. Life Ins. Co. v. U.S., 922 F.2d 320, 324 (1990). A claim dismissed under Civil Rule 12(b)(1) is only precluded from being brought again as to the jurisdictional issue. *Id.* In contrast, dismissal under Rule 12(b)(6) resolves the issue on the merits and with prejudice. *Id.*

## ANALYSIS

A. *FDCPA Claims*

1. Standing

**\*3** NAFS first argues that because "Plaintiff does not ... assert that he was obligated or allegedly obligated to pay any debt" he cannot be considered a consumer under the FDCPA and therefore does

not have standing to bring a claim under provisions § 1692(e), and § 1692(f).[FN1] Def.'s Mot. to Dismiss at 1. The question of whether a non-consumer has standing to bring a claim under the FDCPA implicates the court's subject matter jurisdiction. Accordingly, the Court will address it first. *See Match–E–Be–Nash–She–Wish Band of Pottawamie Indians v. Engler,* 301 F.3d 616, 618 (6th Cir.2002) (jurisdictional issues must be "addressed prior to reaching the merits").

> FN1. In his complaint, Mr. Kane did not specify which provisions of the FDCPA his claim is brought under. He clarified at oral argument that he is not bringing a claim under § 1692(c). The Court presumes he is not arguing for relief under provisions he did not mention in his pleadings, and accordingly, addresses only the provisions, aside from § 1692(c), to which he specifically refers in his response to the motion to dismiss. These include § 1692(d), § 1692(e) and § 1692(f). In any case, as a non-consumer, he does not have standing to bring a claim under § 1692(c). *See Montgomery v. Huntington Bank,* 346 F.3d 693, 696–97 (6th Cir.2003) ("only a 'consumer' has standing to sue for violations of 15 U.S.C. § 1692(c).").

NAFS is correct that Mr. Kane is not a consumer under the statute. Under the FDCPA, a consumer is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692(a)(3). Here, Mr. Kane's complaint states explicitly that he does not have a business relationship with Blockbuster, and does not owe the company any rental fees. Compl. ¶¶ 15–16. Nor does Mr. Kane claim that NAFS ever alleged that he was obligated to Blockbuster. Furthermore, Mr. Kane appears to drop any such claim in his response, in which—rather than arguing that he *is* a consumer under the statute—he argues that the FDCPA "does not limit itself to enforcement by consumers." Pl.'s Resp. at 1, ECF No. 9. Accordingly, Mr. Kane has standing under the FDCPA to pursue only claims which may be brought by non-consumers.

This conclusion, however, does not preclude his claims under § 1692(e) or § 1692(f). The Sixth Circuit has explicitly held that non-consumers have standing to bring claims under § 1692(e). *Montgomery v. Huntington Bank,* 346 F.3d 693, 696–97 (6th Cir.2003) ("Of these three sections, [§ 1692(c), § 1692(d) and § 1692(e),] relief is limited to consumers only under § 1692(c)."). The court read § 1692(e) alongside the broad language of the FDCPA's enforcement provision, § 1692(k)(a), and concluded, "this means that *any* aggrieved party may bring an action under § 1692(e)."[FN2] This conclusion is readily extended to § 1692(f), the terms of which parallel those of § 1692(e). Specifically, each provision proscribes certain actions by debt collectors, and neither provision mentions consumers. Section 1692(e) provides that *"a debt collector may not use* any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e) (emphasis added). Section 1692(f) provides that, *"a debt collector may not use* unfair or unconscionable means to collect or to attempt to collect any debt." 15 U.S.C. § 1692(f) (emphasis added). Accordingly, Mr. Kane need not be a consumer to have standing under § 1692(e) *or* § 1692(f).

> FN2. Section 1692(k)(a) provides that a debt collector who fails to comply with any provision of the sub-chapter, with respect to *any person* is liable to that person.

2. Failure to State a Claim

i. § 1692(e) and § 1692(f)

Next, NASF argues that Mr. Kane's claims under § 1692(e) and § 1692(f) must be dismissed for failure to state a claim because Mr. Kane knew that NAFS was not trying to collect a debt owed by him.

***4** Sections 1692(e) and 1692(f) prohibit debt collectors from using "false, deceptive, or mislead-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

ing representations" or "unconscionable means" to collect debts. To determine whether a debt collector's practice is deceptive within the meaning of the Act, the Sixth Circuit has adopted "an objective test based on the understanding of the 'least sophisticated consumer.' " *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 400 (6th Cir.1998). The proper inquiry is whether "the least sophisticated consumer would be deceived by a collection agency's [communications]." *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1028 (6th Cir.1992).

Applying this standard, district courts in this circuit have held that when a plaintiff knew that the debt collection agency was not attempting to collect on a debt owed by *him,* then as a matter of law, he can not sustain an FDCPA claim under § 1692(e) or § 1692(f). *See, e.g., Kaniewski v. National Action Financial Services,* 678 F.Supp.2d 541, 546 (E.D.Mich.2009) ("There is no dispute that Plaintiff knew that Defendant was not attempting to collect a debt from him. Accordingly, Plaintiff cannot meet the 'least sophisticated consumer test' as a matter of law."); *Hill v. Javitch, Block & Rathbone, LLP,* 574 F.Supp.2d 819 (S.D.Ohio 2008) (dismissing a claim under § 1692(f) when, "even the least sophisticated consumer" would have understood "that [Defendant] was not attempting to collect a debt from Plaintiff").

Here, the undisputed facts establish that Mr. Kane knew that NAFS was attempting to collect a debt owed by Ms. Bartlett, not by him. *See* Compl. ¶¶ 29; 36 ("NAFS left multiple prerecorded messages concerning an alleged debt owed by Ms. Seana Bartlett to Blockbuster."; "Each time Mr. Kane would contact NAFS ... he would receive an automated message indicating that he was Ms. Seana Bartlett and that an alleged debt was owed."). As the court in *Hill* observed, "[e]ven an unsophisticated consumer knows [his] own name." *Hill,* 574 F.Supp.2d at 826. Accordingly, Mr. Kane's claims under § 1692(e) and § 1692(f) fail as a matter of law, and NAFS's motion to dismiss as to those claims will be granted.

ii. § 1692(d)

NASF also argues that Mr. Kane's claim under § 1692(d) must be dismissed. Section1692(d) provides that a debt collector may not, "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Mr. Kane alleges violation of § 1692(d)(5) and § 1692(d)(6), each of which describe specific prohibited actions.

Section 1692(d)(5) proscribes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692(d)(5). An intent to harass may be inferred from "not only ... the volume of calls made, but also [from] the pattern of calls." *Saltzman v. I.C. System, Inc.,* No. 09–10096, 2009 WL 3190359, at *7 (E.D.Mich.2009) (quoting *Akalwadi v. Risk Management Alternatives, Inc.,* 336 F.Supp.2d 492, 505 (D.Md.2004)). A high volume of calls alone has been found sufficient to state a plausible claim that a debt collector engaged in harassing conduct. *See Valentine v. Brock & Scott, PLLC,* No. 2:09–CV–2555, 2010 WL 1727681, at *4 (D.S.C. Apr.26, 2010) (denying motion to dismiss where plaintiff alleged that "Defendant called Plaintiff 11 times over a period of 19 days, with two of those calls occurring on the same day"); *Brown v. Hosto & Buchan, PLLC,* 748 F.Supp.2d 847, 852 (W.D.Tenn.2010) (denying motion to dismiss where Plaintiff alleged that Defendant "called [plaintiff's] telephone seventeen times in one month and called her cellular telephone using an automatic telephone dialing system at least once"); *see also Akalwadi,* 336 F.Supp.2d at 505 (finding a genuine issue of material fact as to harassment when approximately twenty-six calls were placed over a two-month period). Accordingly, Mr. Kane's allegations that NAFS placed "several hundred phone calls" to him over a four-year period are sufficient to raise his right to relief under § 1692d(5) "above the speculative level." *Bell Atlantic,* 550 U.S. at 555. NASF's motion will be denied as to this claim.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*5** Section 1692(d)(6) proscribes "plac[ing] ... telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692(d)(6). To "meaningfully disclose" its identity a caller must, "state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call or the reason the questions are being asked." *Saltzman,* 2009 WL 3190359, at \* 8. Mr. Kane alleges that, in the prerecorded messages left on his phone, "NAFS failed ... to notify Mr. Kane that the calls were from a debt collector." Compl. ¶ 28. Accordingly, he has stated a plausible claim to relief under § 1692(d) (6), and NASF's motion will be denied as to this claim.

B. *TCPA Claim*

1. Standing

NAFS argues that because Mr. Kane did not complain that he incurred individual charges for the calls made to his cell phone then he has not suffered an injury-in-fact, a requirement for constitution standing under *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). NAFS derives its argument from the language of the TCPA, which NAFS argues, requires a plaintiff to plead that he was charged for the calls that form the basis of his TCPA claim. This characterization of the issue is incorrect on two fronts. First, as discussed below, NAFS is incorrect that the TCPA requires plaintiffs to plead that they were individually charged for each call placed. Second, even if pleading such charges were necessary to *state a claim* under the TCPA, it would still not be required for a plaintiff to have constitutional standing. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action in which petitioners could actually recover.").

Here, Mr. Kane has satisfied the elements of constitutional standing. He has alleged an injury-in-fact: the receipt of "several hundred phone calls" to his personal cell phone over a four-year period. The calls, having been placed by NAFS, are traceable to NAFS's actions. And, finally, a favorable decision in this suit will redress Mr. Kane's injury by awarding statutory damages to him. *See Lujan,* 504 U.S. at 560–61 (setting forth the requirements of injury, causation, and redressability); *see also, Anderson v. AFNI, Inc.,* No. 10–4064, 2011 WL 1808779, at \*6 (E.D.Pa. May 11, 2011) (finding constitutional standing under the TCPA on similar facts).

2. Failure to State a Claim

NAFS argues that Mr. Kane has failed to state a claim under the TCPA because (1) he was an "incidental and unintended" recipient of the calls from NAFS, and therefore not a "called party" as the term is used in the statute; and (2) he did not allege that he incurred individual charges for each call made to his cell phone. The Court will address each argument in turn.

i. Called Party

Under 227b(1)(A)(iii) of the TCPA, it is unlawful

**\*6** (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227b(1)(A)(iii). Mr. Kane alleges that NAFS violated this provision when it placed phone calls to his cell phone without his prior express consent. NAFS argues that Mr. Kane was not the "called party" as the phrase is used in the stat-

ute. He was only an "unintended and incidental recipient of the calls," and thus does not have statutory standing to bring the claim. Def.'s Mot. to Dismiss at 10.

"Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Graden v. Conexant,* 496 F.3d 291, 295 (3d. Cir.2007). To determine whether a plaintiff has statutory standing, a court first looks at the text of the statute, and then if ambiguous, to other indicia of congressional intent. *Id.* The TCPA grants a private right of action to any "person or entity." See 47 U.S.C. § 227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of a court of a State, bring ... an action based on a violation of this subsection ...."); *see also, Anderson,* 2011 WL 1808779, at *8 ("[T]he fundamental point is that § 227(b)(3) unambiguously grants standing to 'any person or entity' ").

NAFS argues that construing the TCPA to permit *any person* to bring a claim renders meaningless the statute's exception for liability when the call is made with the "prior express consent of the called party." 47 U.S.C. § 227b(1)(A). If standing to bring suit is not limited to the *intended recipient* of a call, NAFS contends, then a business that attempts to comply with the statute by getting the prior express consent of the party it intends to call, will nonetheless be subject to liability if an *unintended* recipient happens to answer the phone. Def.'s Reply at 4 (citing *Leyse v. Bank of America National Ass'n,* No. 09 Civ. 7654, 2010 WL 2382400, at *4 (S.D.N.Y. June 14, 2010) ("If the business is liable to whoever happens to answer the phone or retrieve the fax, a business could face liability even when it intends in good faith to comply with the provisions of the TCPA")). Accordingly, NAFS concludes, to give effect to the prior-express-consent exception, the term "called party" must be synonymous with the *intended* recipient of the call, and only the intended recipient of a call should have standing to bring suit.

NAFS relies primarily on two cases to support its position: *Leyse;* and *Kopff v. World Research Group LLC,* 568 F.Supp.2d 39 (D.D.C.2008). Each case is distinguishable from the case at hand. In *Leyse,* DialAmerica placed a telemarketing call to Genevieve Dutraux on behalf of defendant Bank of America, but Dutraux's roommate Leyse answered the phone. Leyse and Dutraux each brought suit under the TCPA. The district court dismissed Leyse's claim for lack of standing, reasoning that because the phone number dialed was associated with Dutraux's name in defendant's records, then Dutraux, not Leyse, was the intended recipient of the call. As an unintended and incidental recipient of the call, the court concluded, Leyse lacked standing. *Leyse,* 2010 WL 2382400, at *5–6.

***7** Similarly in *Kopff,* the district court found that an administrative assistant who intercepted an unsolicited fax addressed to the president of the company did not have standing to sue for violation of the TCPA. The court noted that although it "might think otherwise were the faxes addressed generically," where there is "a specific, existing addressee, the Court is persuaded that the TCPA cause of action is his." *Kopff,* 568 F.Supp.2d at 42.

As mentioned above, *Leyse* and *Kopff* are distinguishable from Mr. Kane's claim. In each of those cases, the telemarketer at issue had the correct phone number for the party it was attempting to contact. The person who answered the phone or received the fax really was an "incidental" recipient of a properly-directed communication. On those facts, *Leyse* 's concern that when unintended recipients of a communication have standing, "a business could face liability even when it intends in good faith to comply with the provisions of the TCPA" is sound. *Leyse,* 2010 WL 2382400, at *4. Here, however, unlike in *Leyse* and *Kopff,* Mr. Kane was *not* an *incidental* recipient of a call properly directed to someone else. NAFS, although it intended to reach Ms. Bartlett, also intended to, and did, call Mr. Kane's personal cell phone number. The reasoning in *Leyse* and *Koppf* does not support the con-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

clusion, especially in the face of the broad statutory grant of standing in § 227(b)(3), that in such situations a plaintiff should not have standing to sue.

Two district courts have addressed the issue on facts that more closely parallel those presented here, and each concluded that plaintiffs in Mr. Kane's shoes had standing to under the TCPA. *See Anderson,* 2011 WL 1808779; *Tang v. Seigel,* No. 11 C 599, 2011 WL 2356390 (N.D.Ill. June 14, 2011). In *Anderson* and *Tang,* as in this case, the defendant repeatedly placed calls to the plaintiff's cell phone, attempting to collect a debt owed by a third party who had no connection to the plaintiff or the plaintiff's cell phone. In *Anderson,* after reviewing the implications of the *Leyse* and *Koppf* decisions, the court ultimately relied on the plain text of the statute, concluding, "the fundamental point is that § 227(b)(3) unambiguously grants standing to any 'person or entity' and this grant does not contradict the rest of the statute." *Anderson,* 2011 WL 1808779, at *8. In *Tang,* the court concluded that because the defendant intended to call Tang's cell phone, Tang was not an *unintended* recipient of the calls, and therefore had standing to sue. *Tang,* 2011 WL 2356390, at *2 ("Because Seigel intended to call Plaintiff's cellular phone number, Plaintiff received the calls, and Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a 'called party' under the TCPA.").

The Court agrees with the reasoning of *Anderson* and *Tang,* and finds that Mr. Kane has standing because the statute unambiguously grants standing to any "person or entity" to bring a claim. Additionally, even if, as *Leyse* suggests, incidental recipients of a communication otherwise properly directed to the intended party should not have standing to sue, Mr. Kane was not an incidental recipient of NAFS's communications because NAFS intended to, and did, call his personal cell phone number.

ii. Charged for the Call

**\*8** Finally, NAFS argues that because Mr. Kane has failed to plead that he was charged for the calls allegedly placed to his cell phone, then he has not stated a claim for relief under the statute. NAFS's argument is premised on the final clause of § 227b(1)(A) (iii), which prohibits making

> any call ... using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service *for which the called party is charged for the call.*

47 U.S.C. § 227(b)(3) (emphasis added). In NAFS's view, the final clause modifies the entire provision, and therefore to state a cause of action under the statute, a plaintiff must allege that he was charged for each call placed to his cell phone. This argument does not warrant dismissal.

As Mr. Kane states, "a cursory review of the provision reveals that the phrase in question does not modify the series that precedes it, but rather stands as a separate category unto itself, for which claims could arise." Pl.'s Resp. at 9. At least one district court addressing the issue has reached the same conclusion. See *Gutierrez v. Barclays Group,* No. 10cv1012, 2011 WL 579238, at *5 (S.D.Cal. Feb.9, 2011) ("[T]he phrase 'for which the called party is charged for the call' modifies only 'any service,' not the preceding sections of the statute"). This Court agrees, and will deny NASF's motion to dismiss on this basis.

### CONCLUSION

For the foregoing reasons, the Court will grant NASF's motion to dismiss with respect to Mr. Kane's claims under § 1692(e) and § 1692(f) of the FDCPA, but deny NASF's motion to dismiss with respect to Mr. Kane's claims under § 1692(d)(5) and § 1692(d)(6) of the FDCPA, and Mr. Kane's claim under § 227b(1)(A)(iii) of the TCPA.

### ORDER

**WHEREFORE** it is hereby **ORDERED** that defendant's motion to dismiss (docket no. 8) is **GRANTED IN PART** and **DENIED IN PART** as

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 6018403 (E.D.Mich.)
**(Cite as: 2011 WL 6018403 (E.D.Mich.))**

set forth above.

E.D.Mich.,2011.
Kane v. National Action Financial Services, Inc.
Slip Copy, 2011 WL 6018403 (E.D.Mich.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.